## BELL *vs.* GLAZIER & Trustee.

Section 9, of the act of June 30, 1841, "making farther provisions in relation to the trustees of debtors," does not entitle the plantiff to costs against the trustee, by reason of the fraudulent acts of the trustee in reference to the property of the principal debtor, designed to aid him in defeating or delaying his creditors, but which have transpired anterior to the passage of the act.

FOREIGN ATTACHMENT.    The only question made was, whether the trustee was liable to the plaintiff in costs.

The trustee disclosed as follows :

" Some time in 1837, the principal defendant, Glazier, em-

Bell *v.* Glazier.

ployed me to get for him the insurance money on his build-ings, which were burned. I obtained the money, to the amount of about $600. Glazier at that time had bargained for a piece of land with one Parker, and wished me to take a deed of the land running to myself, and pay Parker for him the price agreed upon: viz., $325, out of said insurance money, which I did. Afterwards, I think about six months, Glazier bargained the same land, being the land on which one Perkins now lives, to said Perkins, and I, at Glazier's request, executed to said Perkins a deed of said land, for which I received in payment a note or notes, but to what amount I do not recollect. These notes I passed over to Glazier, fully, and without reserve or claim on them, and have since known nothing of the notes, or the avails of them, to my recollection. Out of the remainder of said insurance money in my hands, Glazier paid me about $90, in part pay-ment of a note for $200 which I held against him, and the balance of said insurance money I paid over to Glazier. I find a bill of settlement with said Glazier among my papers, dated June 29, 1839, signed by both of us, which shows a balance of $131.48 due to me. I then took his note of the same date, for $131.48, which I have ever since had, and still have in my possession. All our affairs and deal previous to said June 29, 1839, were settled on that day, and balanced by said note for $131.48, excepting some small items, for-gotten or overlooked at the time of settlement. Since said June 29, 1839, I have had no property of said Glazier of any kind, to my knowledge or recollection; nor have I owed him; but he, on the contrary, has owed and still owes me.

"I took the aforesaid deed at Glazier's request, to oblige him. Glazier was, as I think, talking of going, or intending to go, to Alabama, to work a year, or about that time, and wished for a place where his wife and children might live in his absence. I had no interest in the trade, and received nothing for so doing, of consequence, as I recollect.

"I made said deed to Perkins, as I have ascertained by

referring to the deed itself, now in R. N. Brown's possession, September 15, 1837. I do not with certainty recollect the amount or date of said note or notes obtained for the land sold to Parker, but have enquired of R. N. Brown, who says it was for $450, of same date with said deed.

" I do not recollect whether Glazier took any written or other evidence from me in relation to the insurance money, or any evidence of his right to the land. The transaction was a public one in that neighborhood, and the fact known, as I think, to many of the people in the vicinity, whose names I now mention.

" I had not any purpose or intention, in taking said deed in my own name, to aid Glazier in keeping the same from his creditors. I did not then know of any debt owing by Glazier to any body at that time, except my note against Glazier for $200, on which he applied $90 of the insurance money. Glazier did not, to my knowledge, procure the deed from Parker to me to be so made, to keep it from his creditors. I kept the Perkins note but a short time, not exceeding two or three days at the farthest. I passed it to Glazier at the first convenient opportunity. Glazier first spoke to me about the business a little while before I obtained the insurance money for him, and told me what the Parker tract of land could be had for, and seemed to think it a good chance for a bargain, and that it could be sold for more than its price, and wished me to pay Parker from the insurance money, when I obtained it, and take the title. I cannot recollect that he assigned any reason in particular why he wished me to take the deed running to myself. Parker made out the deeds himself, as Glazier wished, and as I believe, directed, at the time of these events, which happened in May, 1837. Glazier has never since said anything to me on the subject. I think the whole transactions, viz., the obtaining of the money, the purchase of the farm, and the paying over the balance of the money to Glazier, took place in the spring of 1837. Glazier never expressed any intention to keep his property in

such a way that his creditors could not obtain any benefit from it, and never gave any other reason than as above stated, why he wished me to take the deed in my own name."

This suit was commenced June 2, 1840.

*Bell*, pro se. The declaration in this case is upon a note dated prior to the time of the conveyance from Packer to the trustee. The conveyance must, therefore, be regarded as voluntary, as against the plaintiff, an existing creditor. Wilson took the conveyance fraudulently, as against such a creditor. The law attaches the fraudulent intent to the act.

Section 9, of the act of June 30, 1841, "making further provisions in relation to the trustees of debtors," warrants the allowance of costs against the trustee in the present case.

*Hibbard*, for the trustee. Section 9, of the act of June 30, 1841, relating to the trustees of debtors, does not apply to this case. The plaintiff's writ bears date June 2, 1840.

The land was held by the trustee, in 1837, about six months. The statute does not apply to past transactions. The language of the act, "has received the property of the principal debtor," &c., "or holds any bill of sale or other conveyance from him," &c., refers to transactions present or passing. The act would be a retrospective law, if it were to have the effect claimed for it by the plaintiff.

It does not appear that there was any fraudulent purpose on the part of the trustee, in the transaction under consideration. In fact, the contrary thereof does appear.

Woods, J. This case raises a question of costs only. The trustee has been already discharged from all other liability. The plaintiff claims to recover against the trustee his reasonable costs of this litigation with him, in contravention of the general rule which allows costs to the trustee, in the event of his discharge. The claim is made in virtue of the provisions of section 9 of the act entitled, " an act making

further provisions in relation to the trustees of debtors," passed June 30th, 1841. The language of that section is as follows, viz : " In all cases where it shall be made to appear to the court that any person summoned as trustee has received the property of the principal debtor, or holds any bill of sale or other conveyance from him, with intent to aid him in defeating or delaying any of his creditors, costs shall be taxed against such trustee."

The plaintiff contends, that although the trustee in his disclosure denies all intention of aiding the principal defendant in delaying or defeating his creditors, yet inasmuch as such was the necessary effect of his acts, the law conclusively presumes the intention, and the court are bound to pronounce judgment accordingly.

Waiving all enquiry as to the soundness of the position assumed, we are all of opinion that the facts disclosed do not bring this case within the purview of the provisions of the section of the act referred to. The act complained of had transpired before the date of the law. The costs imposed are given as a penalty, or rather in the nature of a penalty for the commission of a prohibited and illegal act. And it is not to be presumed that the legislature would purpose imposing a penalty, or costs in the nature of a penalty, for transactions already past at the date of the law imposing the penalty. Such legislation could not, we think, be regarded as wise, judicious, or politic, if it should, upon investigation, be found to be warranted by law. Indeed, I think it might well be said to be at war with every principle of reason and justice, if not with the whole course of legislation in this state. And we should not readily give to this act such a construction as would give it the effect of imposing a penalty, or its equivalent, by way of costs, for acts already past at the date of its passage, unless it should be found that the language of the act itself imperiously demanded it.

But we think that no such construction is required by the language of the section under consideration. It may well be doubted whether that is the most obvious construction of

which it is susceptible. It was only intended, as we hold, to apply to and affect cases arising subsequently to the passage of the act itself. In order that the case can be regarded as coming within the provisions of the section in question, it must be made to appear that the trustee has had possession of some portion of the property of the principal debtor, or has held some bill of sale, or other conveyance thereof, at some period at least as recent as the date of the act under consideration, accompanied with the purpose of aiding him in the fraudulent purpose of delaying or defrauding some of his creditors.

It is not necessary, in this case, to determine what other limits, if any, are prescribed by the statute to the period within which the fraudulent transactions of the trustee must occur, in order to warrant the imposition of costs. Nor is it necessary to determine the question made at the argument, whether the conveyance of the land from Parker, or the possession of the notes of Perkins, was holden by the trustee under circumstances so conclusively evidencing the fraudulent intention of aiding the principal debtor in delaying and defrauding his creditors, as would warrant the same result.

It is sufficient, that the transactions relied upon as the foundation of the motion for the allowance of costs, transpired at a period prior to the passage of the act upon the provisions of which the plaintiff rests his claim for costs.

The plaintiff's motion for costs must, therefore, be denied.